Daniel LoCONTE, Petitioner-Appellant,

v.

Richard DUGGER, Robert A. Butterworth, Respondents-Appellees.

No. 87–3538.

United States Court of Appeals, Eleventh Circuit.

June 20, 1988.

---

4. Fla.Stat. § 48.193(1)(b) (1985).

Gwendolyn Spivey Lanier, Orlando, Fla., for petitioner-appellant.

Mark Menser, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before RONEY, Chief Judge, ANDERSON, Circuit Judge, and ALLGOOD\*, Senior District Judge.

ALLGOOD, Senior District Judge:

The appellant, Daniel LoConte, appeals from the district court's denial of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. On June 27, 1975, he pled guilty to and was convicted of the offense of first degree murder, and was sentenced to life in prison subject to Florida's minimum mandatory twenty-five year prison term. The petition for habeas relief filed in the district court and on appeal here asserts two grounds for relief: first, that the petitioner's guilty plea was not knowing, intelligent, and voluntary; and second, that he did not receive effective assistance of counsel because his court-appointed attorney was in an irreconcilable conflict of interest due to his multiple representation of the appellant and his co-defendants. The district court denied relief on July 17, 1987, and this appeal followed.

*I. Factual and Procedural Background*

Appellant and his three co-defendants, Frank Ignazio, Ignazio's seventeen year old wife, Susan, and Luther (Luke) Creel, were charged with the murder of Gary Lynn Hatcher on March 8, 1975. Although appellant was thirty years of age at the time of the offense and had never been found to be mentally incompetent, he had spent most of his childhood and adolescence being raised in state hospitals and institutions in Pennsylvania. He received no formal education and was unable to read or write at the time of the offense in 1975. As a young adult, appellant became involved in motorcycle clubs, where he met Ignazio two or three months before the murder of Gary Lynn Hatcher.

On the evening of March 7, 1975, the appellant and his three co-defendants, traveling from Louisiana, arrived at the Ft. Walton Beach home of Gary Lynn Hatcher, who then lived with his parents. There, Hatcher, appellant, and the other co-defendants began drinking and using drugs well into the early morning hours of March 8, until Hatcher's parents demanded that they leave. The five left in Ignazio's automobile and drove to a rural wooded area near Destin, Florida. Parked on a rural dirt road near a lake, some of the members of the party fell asleep in the automobile, while others left the car. There is evidence to suggest that Ignazio's wife, Susan, was sleeping in the front seat of the car. The appellant claimed that, after initially leaving the car, he too returned and fell asleep in the back seat of the car. At some point, Ignazio shot Hatcher in the head with a .12–gauge shotgun belonging to appellant, and Creel removed Hatcher's billfold from his lifeless body.

The four were apprehended by police in Tallahassee, Florida later during the evening of March 8, 1975. They were returned to the Okaloosa County Jail in Crestwood, Florida, where all four remained until June 27, 1975. At the time of these events, appellant had a wife and small child, from whom he was separated.

About a month after the arrest of the foursome, they were arraigned on first degree murder charges and Albert Grinsted was appointed by the court to represent appellant, Ignazio, and Ignazio's wife. Creel had separate appointed counsel. While being held in jail, and unbeknownst to his court-appointed lawyer, Ignazio sent a note to an assistant state attorney, indicating that he wished to make a statement. Ultimately Ignazio began to negotiate a plea agreement, still without counsel's knowledge or consent, that would require Ignazio, appellant, and Creel to enter pleas

\* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

of guilty to first degree murder, in return for the state's promise not to seek the death penalty against the three and to release Ignazio's wife from prosecution on all charges. Ignazio then persuaded the appellant to go along with the plea bargain agreement, convincing the appellant that the guilty pleas could be later challenged and set aside as being involuntary. Ignazio also prevailed upon the appellant to help gain the release of Ignazio's wife, and his affection for her figured into his willingness to participate in the plea agreement. Additionally, Louisiana police authorities contacted appellant during this time. During an interview in the presence of his attorney, appellant was informed that his own wife had been arrested on a charge of first degree murder in Louisiana. Appellant contends that the Louisiana authorities told him that the murder charges against his own wife would be dropped if appellant entered a guilty plea on the first degree murder charge arising from Hatcher's death.

On June 27, 1975, appellant, Frank Ignazio, and Luther Creel were taken before the state trial court where they entered pleas of guilty to murder in the first degree. When attorney Grinsted was informed of the existence of the plea agreement, he unsuccessfully tried to persuade his clients to reject it and go to trial. Twice during the plea hearing, he took appellant aside to attempt to persuade him not to enter the plea and to proceed to trial. Appellant was unrelenting and stood by his decision to plead guilty.[1] Based upon the plea, petitioner was convicted of the offense, and the conviction was affirmed on appeal on May 14, 1976.

Immediately following the loss of his appeal, appellant began filing collateral challenges to his conviction. Ultimately, he filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 on August 22, 1980. At some point, the habeas petition was referred to a part-time magistrate for the purpose of conducting an evidentiary hearing, which was held on June 30, 1986. The magistrate filed his report and recommendation on November 18, 1986, recommending that the petition be granted on the basis of the appellant's assertion that his guilty plea was not intelligent, knowing, and voluntary. The magistrate found no merit in the appellant's assertion that he did not receive the effective assistance of counsel in violation of his Sixth Amendment rights.

By order dated April 8, 1987, the district court accepted the magistrate's finding with respect to the claim of ineffective assistance of counsel and ordered a rehearing of the appellant's claim that his plea was involuntary. On May 20, 1987, the district judge reheard the testimony of two witnesses who had testified before the magistrate, these being the appellant and attorney Grinsted. Following that hearing, the district court entered an order dated July 16, 1987, denying the petition for writ of habeas corpus.

*II. Standard Of Review*

The district court has made extensive findings of fact, some following its own hearing on May 20, 1987, and others adopted from the findings of fact suggested by the magistrate. The threshold question presented on this appeal, and which is necessary for a proper analysis of the legal issues, is what standard of review this court is obliged to apply to the district court's findings of fact. Present on this appeal are three different categories of findings: (1) findings of fact made by the magistrate to which the parties did not object; (2) findings of fact made by the magistrate to which the parties did object with the objections being resolved *de novo* by the district court; and (3) independent findings of fact made by the district court.

■ Findings of fact made by a United States magistrate under the authority of 28 U.S.C. § 636, and which are accepted and adopted by the district court without objection by any party, may be reviewed on

---

1. Consistent with the plea agreement negotiated by Ignazio, all three male co-defendants pled guilty and were sentenced to life imprisonment.

Additionally, all charges were dismissed against Susan Ignazio, and the Louisiana murder charge against appellant's wife was nol prossed.

direct appeal only for "plain error or manifest injustice." *See Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982) (en banc). In effect, such findings of fact, when adopted by the district court, become the findings of the district court itself and, on appeal, the parties may not challenge those findings of fact except for plain error or manifest injustice. Thus, in the instant case, many findings of fact made by the magistrate were adopted by the district court without objection and, now on appeal, will be treated by this court as the findings of the district court. *See also Hardin v. Wainwright,* 678 F.2d 589 (5th Cir. Unit B 1982); *United States v. Warren,* 687 F.2d 347 (11th Cir.1982).

█ Whenever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue. *See Nettles v. Wainwright, supra.* As the use of the phrase *de novo* implies, the district court's consideration of the factual issue must be independent and based upon the record before the court. To the extent that the magistrate has made findings of fact based upon the testimony of the witnesses heard before the magistrate, the district court is obligated to review the transcript or listen to the tape-recording of those proceedings. After doing so, however, the factual conclusions reached by the district court are subject only to a "clearly erroneous" standard of review on appeal. *See F.R.C.P.* 52(a); *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Just as with factual conclusions reached by the district court following objections by parties to the findings of the magistrate, the independent factual determinations of the district court are also subject only to a "clearly erroneous" standard of review on appeal. *See Anderson v. Bessemer City, supra.* As the Supreme Court wrote in that opinion:

> If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the

trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518, 528 (1985). Rule 52(a) of the *Federal Rules Of Civil Procedure* expressly establishes the "clearly erroneous" standard of review as to all types of findings of fact by a district court, and it is not limited simply to findings that turn upon credibility determinations. *See Anderson v. Bessemer City, supra.*

█ There is little practical distinction between the "plain error" standard of review applicable to unchallenged findings of fact by a magistrate and the "clearly erroneous" standard of review relevant to fact findings by the district court. Given the role of the magistrate in improving the efficiency of the federal judiciary by conducting hearings and making findings upon reference by the district court, there is little reason to apply a different standard of review to the fact findings of a magistrate where there is no objection to those findings by the parties. Thus, in the final analysis, all of the findings of fact reached by the district court, whether by way of a magistrate or *de novo* review of the record or an independent evidentiary hearing, are subject to reversal on appeal only if clearly erroneous.

While the appellate court will review the findings of fact by the district court only to determine if they are clearly erroneous, the court is quick to note that the review of issues such as ineffectiveness of counsel and the voluntariness of guilty pleas is plenary. The court has long held that these issues are mixed questions of fact and law and are, therefore, subject to independent review on appeal. *See Martin v. Kemp,* 760 F.2d 1244 (11th Cir.1985); *Smith v. White,* 815 F.2d 1401 (11th Cir. 1987).

### III. Discussion Of Legal Issues

#### A. Voluntariness Of Guilty Plea

After conducting an evidentiary hearing in this cause, the magistrate initially con-

cluded that the appellant's plea of guilty to the charge of first degree murder was neither knowing, intelligent, nor voluntary, and he recommended that habeas relief be granted on that ground. That recommendation was rejected by the district court in its order of April 8, 1987. Thereafter, the district court conducted a separate evidentiary hearing at which it heard the testimony of the appellant and attorney Grinsted. The focus of the evidentiary hearing were the dual assertions by the appellant that, first, his guilty plea was not knowing and intelligent and, second, that influence and coercion exerted upon him made it involuntary. LoConte argued that, because of his below normal I.Q. and the failure of his attorney to discuss the elements and substance of the charge against him, his entry of the plea was not knowing and intelligent. He contends that at the time of the plea hearing he did not understand the elements of first degree murder or that his lack of active participation in the killing may have been a defense. Parallel to this argument was LoConte's contention that he was coerced into making the guilty plea because of the pressure exerted upon him by his co-defendant, Ignazio, and by Louisiana authorities who were investigating an unrelated first degree murder charge against appellant's wife.

Following the evidentiary hearing, the district court found that petitioner's claim that attorney Grinsted never discussed with him the elements and substance of the charge was not credible. The court specifically found that the nature of the charges were conveyed to and understood by the appellant before and at the time of the entry of his guilty plea. Furthermore, based upon the testimony of a clinical psychiatrist, Jan Maurer, and the transcript of the plea hearing colloquy between the appellant and the state trial court, the court found that LoConte was of below average intelligence but was competent to and did in fact understand the nature and consequence of the plea he was entering and the rights and protections he was giving up. Having reviewed the record on this appeal, this court cannot conclude that the district court erred.

■ In order for a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Gaddy v. Linahan,* 780 F.2d 935 (11th Cir.1986). A defendant must receive "real notice of the true nature of the charge against him," rather than a rote recitation of the elements of the offense. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Gaddy v. Linahan, supra.* Although the defendant must be informed about the nature of the offense and the elements of the crime, he need not receive this information at the plea hearing itself. Rather, a guilty plea may be knowingly and intelligently made on the basis of detailed information received on occasions before the plea hearing. *See Gaddy v. Linahan, supra; Moore v. Balkcom,* 716 F.2d 1511 (11th Cir.1983), *cert. denied,* 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984).

■ Appellant argues that the combination of his sub-average intelligence and the failure of his court-appointed attorney to adequately confer and consult with him prior to the plea hearing deprived him of a fair and reasonable understanding of the nature of the charges against him and of the options that were available to him. But the district court found that, despite his below average intelligence and illiteracy, the petitioner was competent to understand the nature of the charges and the consequences of his plea. A mere lack of average intelligence without more does not necessitate the conclusion that a criminal defendant did not know and understand the nature and factual bases of a charge against him. Additional care must be taken, however, to assure that such a defendant does have a clear understanding of the consequences of his act. *See Gaddy v. Linahan, supra.*

■ There is sufficient evidence in the record before this court to more than adequately support the district court's conclusion that the appellant was competent to enter his plea and had a reasonably intelligent understanding of the nature and consequences of his plea. Moreover, this court cannot say that the district court was clearly erroneous when it found that the appellant had consulted with attorney Grinsted on several occasions prior to the plea hearing, and that through those consultations, appellant had been reasonably informed about the nature of the charge against him, its essential elements, and the factual basis underlying it.

Appellant argues that his plea could not be knowing and intelligent because his attorney had not adequately investigated the charges against him. Without such investigation and preparation, appellant argues, counsel was unable to assist the appellant in understanding the charges and the consequences of a plea. This argument overlooks the fact, however, that appellant entered this guilty plea against the advice and despite the protest of his attorney. Plainly, counsel's advice against the guilty plea indicates some investigation and preparation on his part that revealed the possibility of a defense at trial. Indeed, attorney Grinsted testified before both the magistrate and district court that he felt the state's case against LoConte was weak, lacking any physical evidence tying him to the killing and based solely upon the inconsistent and conflicting statements of Creel and Ignazio. Moreover, the district court found that trial counsel had consulted with appellant on a number of occasions about the defense of this charge, and twice during the plea hearing counsel attempted to persuade appellant not to go through with the entry of a guilty plea. LoConte's adamance in the face of this resistance by his attorney makes it difficult for this court to conclude that he did not know what he was doing.

■ Petitioner also argues that his guilty plea was involuntary because of coercion exerted upon him by his co-defendant, Frank Ignazio, and by Louisiana authorities. He contends that Ignazio used every influence available to him to persuade appellant to enter a guilty plea in order to save Ignazio from the electric chair and to secure the release of Ignazio's wife. He also asserts that Louisiana police authorities informed him that his wife had been arrested and was being held in Louisiana on a first degree murder charge and, if he pled guilty in this case, the charges against his wife would be dropped. The combination of these pressures, plus the stress of being in jail under a first degree murder charge, made his guilty plea coerced and involuntary.

■ Although the district court found as fact that appellant was under pressure from these two sources, it concluded that the pressure was not so great as to make the appellant's guilty plea involuntary. The district court reasoned that the pressure exerted by Louisiana police officials caused the appellant to do no more than enter a guilty plea out of a desire to protect his wife from further prosecution. The decision to enter a plea of guilty in order to protect his wife from prosecution does not mandate the conclusion that the plea was involuntary. *See Allen v. Rodriguez*, 372 F.2d 116 (10th Cir.1967). There is no evidence to indicate that the representations made by the Louisiana officials were false; indeed, there was independent evidence in the form of letters from appellant's wife confirming the statements made by these officials. The fact that the appellant chose to enter a guilty plea in order to protect his wife does not undermine the voluntariness of the plea entered here. *See Martin v. Kemp*, 760 F.2d 1244 (11th Cir. 1985).

The district court also found that, although Frank Ignazio handled the plea agreement negotiations with an assistant state's attorney, there was no evidence to support the conclusion that the state participated in any pressure or coercion exerted by Ignazio against the appellant. The district court found that Ignazio undertook for his own reasons—to save himself from a possible death sentence and to secure the release of his wife—to persuade appellant

to enter a guilty plea as part of a package by which all three of the male co-defendants would plead guilty to the charge. Ignazio convinced the appellant that the guilty pleas could be challenged and set aside later as coerced. The district court found that there was no evidentiary ground upon which to conclude that the state's attorney with whom Ignazio was negotiating had any knowledge of the pressures being exerted by Ignazio upon the appellant.

 Simply because the appellant was subjected to pressure from sources not associated with the state or prosecutors does not mean that his plea was necessarily involuntary. It is not an uncommon occurrence that a criminal defendant is pressured to some extent by co-defendants, friends, and relatives. These types of influences are inevitable and unavoidable. Short of absolute isolation of a pretrial detainee, the state has no practicable ability to prevent the exertion of such pressures upon a criminal defendant by his co-defendants and family members. It is only where the plea is coerced by conduct fairly attributable to the state that the due process clause of the Fourteenth Amendment is offended. Such private coercion may be said to be fairly attributable to the state if it is procured and sanctioned by prosecutors or the state trial court. Additionally, it is at least arguable that such coercion may be attributable to the state if, at the time a defendant offers his guilty plea, the prosecutors or the trial court either know or reasonably should know the existence of such coercions. In the instant case, however, the plea colloquy contains nothing that would reveal to the state trial court that the plea being offered by appellant was the product of improper influences or duress. The state trial court conducted an extensive colloquy, inquiring into the appellant's understanding with respect to the waiver of rights inherent in a guilty plea and the consequences of that plea. At the plea hearing, appellant expressly stated that he had *not* been coerced into his plea. Moreover, after hearing the evidence in this case, the district court found that there was no reason to believe that the state

prosecutor was aware of the pressure being exerted by Ignazio on the appellant.

In the final analysis, the appellant chose voluntarily to enter a guilty plea for his own personal reasons. Not only was he seeking his own wife's release in Louisiana, he believed that the "biker's code" required him to help Ignazio and Ignazio's wife. Furthermore, appellant benefited himself with the plea by avoiding a possible death sentence. Appellant was convinced by Ignazio's ill-conceived notion that the guilty pleas could be subsequently attacked and set aside on the basis of coercion and, therefore, knowingly and voluntarily entered into this "plan" by Ignazio to gain the immediate release of their wives while reserving a later attack upon their own guilty pleas. The fact that the plan was foolish and stupid does not mean that the guilty pleas entered pursuant to it were involuntary in a constitutional sense. Whether the appellant chose to enter this plea out of a desire to help his friends, his wife, and himself, or out of a mistaken notion that he could escape its consequences at a later time, we agree with the district court's conclusion that appellant chose to do so out of his own free and voluntary will.

## B. Ineffective Assistance Of Counsel

Appellant also contends that his guilty plea should be set aside because he was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment because his court-appointed attorney labored under an actual conflict of interest while representing both appellant and Frank and Susan Ignazio. *See Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Appellant argues that the interests of appellant and the Ignazios, at least at the point in time of the plea agreement, were in irreconcilable conflict. By entering his plea of guilty and subjecting himself to life imprisonment, petitioner secured the release of Susan Ignazio and saved Frank Ignazio from a potential date with the electric chair. Thus, he asserts, the Ignazios had every reason to hope for fulfillment of the plea agreement

despite the fact that it stripped the appellant of a potential defense on the merits. This conflict of interest, appellant argues, caused his attorney to acquiesce in the appellant's guilty plea, thereby depriving him of effective assistance of counsel.

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court held that an actual conflict of interest by a retained attorney violates the defendant's rights to effective assistance of counsel under the Sixth Amendment. Several years later, in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court established a two-prong test for determining whether the actual performance of an attorney was so inadequate as to violate the Sixth Amendment: first, did counsel commit an unprofessional error; and second, did the error prejudice the defense. Each of those cases seem to state that an actual conflict of interest creates a presumption of prejudice to the defendant; however, the cases are not entirely consistent. *See Chadwick v. Green*, 740 F.2d 897 n. 5 (11th Cir.1984). Inasmuch as neither case dealt with the services of an attorney laboring under an actual conflict of interest, it is not clear how the standards of those cases impact upon the presumed prejudice analysis of *Cuyler v. Sullivan*. The clearest statement, however, is found in *Strickland v. Washington*. There, the court wrote as follows:

> One type of actual ineffectiveness claim warrants a similar, *though more limited,* presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S., at 345–350, 64 L.Ed.2d 333, 100 S.Ct. 1708, the court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interest. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in cer-

tain situations likely to give rise to conflicts, ..., it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. *Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."* Cuyler v. Sullivan, supra, at 350, 348, 64 L.Ed.2d 333, 100 S.Ct. 1708 (footnote omitted). (Emphasis Added).

*Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696–697 (1984). The Supreme Court plainly indicates in that passage that an actual conflict of interest does not carry a per se presumption of prejudice, but a limited presumption. The defendant must establish two elements of the claim: first, an actual conflict of interest and, second, that the conflict of interest "adversely affected" his counsel's representation. *See, also, Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Unlike most other claims of ineffective assistance of counsel, where the defendant is required to prove that his attorney's errors actually prejudiced the defense to the extent of undermining confidence in the outcome of the proceedings, *see Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, the limited presumption of prejudice implied by a conflict of interest requires only a showing of an "adverse effect." Where an actual conflict of interest exists, the defendant is not required to go so far as to prove that the outcome of his trial would have been different, *see Washington v. Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; rather, he need only show that the actual conflict of interest had an adverse effect on his defense. Plainly, that is a somewhat lesser burden of proof than is necessary when there is no limited presumption of prejudice.

Turning to this case, we need not decide whether or not there was an actual conflict of interest. Even if the district court concluded that attorney Grinsted labored under an actual conflict of interest in his representation of the appellant and the Ignazios, it is equally clear that that conflict of interest had no impact whatsoever upon the appellant's decision to plead guilty. Indeed, as noted above, appellant was intent on entering this plea against the advice of his attorney and despite two attempts by his attorney during the plea hearing to dissuade him from entering the plea. Plainly, appellant did not enter his guilty plea based on any advice given to him by his attorney and, therefore, any error or omission the attorney may have made played no part whatsoever in appellant's decision to enter the plea. The recognized danger of conflicting representation lies in the inability of an attorney to offer full and candid advice to one client where the attorney knows that advice will cause harm to another client. Under the facts of the instant case, however, attorney Grinsted vigorously attempted to persuade appellant to insist upon his not guilty plea and to go to trial, despite the obvious adverse consequences that would have for the Ignazios.[2] Plainly, Grinsted's duty of zealous representation of appellant, in fact, was not compromised here because of the multiple representation. See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972).

Appellant argues that had the conflict of interest not existed, attorney Grinsted could have concentrated on appellant's case solely and could have shielded him from the influences exercised by Frank Ignazio. Whether this is true obviously is speculation. The evidence before the district court indicated a strong bond of friendship between appellant and the Ignazios, which there is no reason to believe would not have existed even if appellant had separate representation. Furthermore, appellant had his own distinct reasons for pleading guilty, including his desire to help his own wife with her Louisiana problems and, possibly, his own fear that *he* could receive a death sentence. It is obvious that separate representation would not have eliminated these influences acting upon appellant. The clear evidence leaves this court with the fixed conclusion that appellant chose to enter his guilty plea despite everything his attorney attempted to the contrary. Thus, even if an actual conflict of interest existed, it did not adversely affect appellant's decision to enter this guilty plea.[3]

We agree with the district court that the appellant entered his guilty plea knowingly, intelligently, and voluntarily, and that defense counsel's conflict of interest did not adversely affect appellant's decision to enter a plea. Accordingly, the district court's order denying the appellant's petition for a writ of habeas corpus is AFFIRMED.

---

2. Whether or not the conflict of interest in which attorney Grinsted found himself resulted in ineffective assistance with respect to his representation of the Ignazios is not relevant here. The question presented by this habeas petition is whether this appellant, Daniel LoConte, received ineffective assistance of counsel. Were a habeas petition to be filed by Frank Ignazio, the outcome may be different, although the court may not speculate about that.

3. The court does not wish to leave the impression that multiple representations are to be treated lightly. Rather, the instant case presents a unique set of facts in which a criminal defendant chooses for his own reasons to enter a plea of guilty to a charge of first degree murder despite the protests of his attorney and contrary to his attorney's advice. Even though the attorney was in an irreconcilable conflict of interest, torn between the interests of the appellant in going to trial and in the Ignazios in seeking a plea agreement, it was not any act, error, or omission by that attorney that caused or contributed to the appellant's decision. The unique holding of this case is, therefore, dictated by the unique facts of the case.