**ALL AMERICAN TRADING CORP., Plaintiff,**

v.

**CUARTEL GENERAL FUERZA AEREA GUARDIA NACIONAL DE NICARAGUA, Defendant.**

**No. 93–0028–CIV–GRAHAM.**

United States District Court, S.D. Florida.

April 7, 1993.

Guy B. Bailey, Jr. and Richard M. Davis of Bailey Hunt Jones & Busto, Miami, FL, Charles M. Salas, III, Coconut Grove and Joseph A. Hackney, Deerfield Beach, FL, for plaintiff, All American Trading Corp.

Paul S. Reichler of Reichler & Soble, Washington, DC and Mark V. Silverio of the Law Offices of Mark V. Silverio, Miami, FL, for defendant, Cuartel General Fuerza Aerea Guardia Nacional De Nicaragua.

---

## ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant's Motion for Preliminary Injunction and to quash Plaintiff's Writ of Execution.

**THE MATTER** was referred to the Honorable Barry L. Garber, United States Magistrate. A Report and Recommendation dated February 26, 1993 has been filed, recommending: that this cause be dismissed, that the Writ of Execution be quashed as to the aircraft, and that the Temporary Injunction be vacated. The Plaintiff has filed objections to the Report. The Court has reviewed the pertinent portions of the file, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that United States Magistrate Barry L. Garber's Report and Recommendation that this cause be DISMISSED, that the Writ of Execution be QUASHED as to the aircraft, and that the Temporary Injunction be VACATED is, hereby RATIFIED, AFFIRMED and APPROVED in its entirety, and based thereon, Plaintiff's Objections thereto are OVERRULED and DENIED.

**DONE AND ORDERED.**

## REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court pursuant to an Order of Reference entered in this cause on January 22, 1993. The following Report and Recommendation is hereby submitted on the Defendant's, Cuartel General Fuerza Aerea Guardia Nacional De Nicaragua ("Defendants"), Motion for Preliminary Injunction and to quash the Plaintiff's, All American Trading Corp. ("Plaintiff"), Writ of Execution.

### BACKGROUND

In August 1979, Plaintiff brought suit in the Circuit Court for Dade County, Florida against the Defendant for breach of a promissory note and for suit on open account. (Pl.'s Resp. to Mtn. for Prelim. Inj. at Ex. B). On August 14, 1979 a copy of the summons and complaint were served on Orlando Zeledon ("Zeledon"), allegedly a General and Commander of the Air Force in Nicaragua's National Guard. *Id.* at Ex. A. The Plaintiff filed a motion for default and on September 13, 1979 a default judgment was entered by the state court ordering the Plaintiff to recover from the Defendant the sum of $1,180,-667.03 plus $11,760.89 interest and $57.60 in costs. *Id.* at Ex. E. A Writ of Execution in the amount of $1,192,485.52 with interest from September 13, 1979 was issued on September 26, 1979. *Id.* at Ex. F. A sheriff's sale of $1,000. in aircraft parts belonging to the Defendant was held on March 26, 1980. *Id.* at Exs. G, H, I.

In November 1992 the Air Force of the Republic of Nicaragua sent two military aircraft, a MI–17 helicopter and a Cessna 404 airplane ("aircraft"), from Managua, Nicaragua to Opa Locka Airport, in Dade County, Florida for repairs and maintenance. (Defs. Mtn. for Prelim.Inj. Ex. B Aff. Salvatierra at ¶ 6). Prior to the aircraft arrival at Opa Locka Airport, Colonel Manuel Salvatierra ("Salvatierra") obtained a formal diplomatic clearance from the United States for the aircraft to land at Opa Locka Airport for the scheduled repair and maintenance work. *Id.* On December 18, 1992, a Writ of Execution was served by the Dade County Sheriff's Office on Enrique Esme, the owner of EM Travel Sales, the company performing the repairs on the aircraft. The Writ of Execution was served pursuant to the earlier 1979 judgment. The sheriff's sale was set for February 3, 1993 for the sale of the aircraft.

On January 7, 1993, the Defendant filed a Petition for Removal of the state court proceedings to this Court and a Motion for Preliminary Injunction seeking to enjoin the previously set sheriff's sale and to quash the Writ of Execution claiming that the default judgment was erroneously entered. The Defendant claims that jurisdiction is proper in this Court under 28 U.S.C. § 1441(d) removal jurisdiction. This Court entered an Order temporarily enjoining the February 3, 1993 sale pending further order by the Court. On February 22, 1993 a hearing was held before the undersigned on Defendant's Motion for Preliminary Injunction and Petition for Re-

moval. The parties presented oral argument and witness testimony.

## DISCUSSION

The Defendant claims that the petition for removal in this cause is timely even though brought some thirteen years after the Defendant was allegedly served in the state court proceedings since service was improperly made on Zeledon in 1979[1] and that the Defendant first learned of the 1979 proceedings on December 18, 1992 when it was served with the Writ of Execution. However, this Court need not reach the issue of whether the default judgment was properly entered in the state court proceedings and whether these proceedings were timely removed to this Court since it finds for the reasons set forth below that the aircraft are immune from seizure under the Foreign Sovereign Immunities Act, 28 U.S.C.A. § 1602 et seq. (West Supp.1992) ("FSIA").

### I. JURISDICTION

■ The Defendant claims that this Court has jurisdiction to decide whether the aircraft is subject to the Writ of Execution under 28 U.S.C.A. § 1332(a)(4) (West Supp. 1992). This Court agrees. Section 1332 provides that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

.   .   .   .   .

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

Under § 1603 a Foreign state is defined as:

(a) A 'foreign state', except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An 'agency or instrumentality of a foreign state' means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is niether a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C.A. § 1603 (West Supp.1992). This lawsuit was brought by the Government of the Republic of Nicaragua regarding a judgment in the amount of $1,192,485.52 and the seizure of two of its aircraft. According to the affidavit of Salvatierra, the aircraft are the property of the Republic of Nicaragua and are operated and controlled by its Air Force. (Defs.Mtn. for Prelim. Inj. Ex. B Aff. Salvatierra at ¶ 5). This Court finds that the jurisdictional requirements of §§ 1332(a)(4) and 1603 have been met and that this cause is properly before the Court on the issue of whether aircraft are subject to seizure by the Plaintiff.

### II. FOREIGN SOVEREIGN IMMUNITIES ACT

■ The Defendant claims that the aircraft are immune from seizure under the FSIA which provides that certain property of a foreign state is immune from suit. Section 1611 provides, in pertinent part, that:

(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if—

.   .   .   .   .

(2) the property is, or intended to be, used in connection with a military activity and

---

1. The Defendant claims that on July 18, 1979 Zeledon flew to Honduras from Nicaragua, which was engaged in a civil war. One day later, the revolutionary forces of Nicaragua marched into Managua, Nicaragua and established a new government and military. (Defs.Resp. to Court Order of Jan. 11, 1993 at pg. 3). At the hearing before the undersigned, Colonel Manuel Salvatierra, a Commander of the Air Force of Nicaragua, testified that when Zeledon fled the country in July 1979 he was wanted by the Government of Nicaragua and the new Armed Forces as a war criminal. See also id. The Defendant argues that since Zeledon was in exile in Miami, Florida when he was served with process on August 14, 1979 that service was improperly made on the Defendant under 28 U.S.C. § 1608.

(A) is of a military character, or

(B) is under the control of a military authority or defense agency.

According to the Defendant, the aircraft are used in connection with military activities, such as military transport of troops and senior armed forces commanders, are military in character by the fact that they are used for military transport and are under the control of a military authority—the Air Force of Nicaragua. The Plaintiff argues that the aircraft are not immune under § 1611(b) in that they are in "executive configuration", do not carry weapons or other types of military equipment and were being equipped with more "more luxurious" items when they were seized.

Both parties point to the legislative history of the FSIA in support of their respective positions. The Report of the House Judiciary Committee provides that § 1611(b)(2) property is of military character if it consists of equipment in a broad sense, such as weapons, communications equipment or military transport. (H.R.Rep. No. 94–1487, 94th Cong.2d Sess. at pg. 31 (1976), U.S.Code Cong. & Admin.News 1976, at pg. 6604, 6630). The property satisfies the second condition if it is intended to protect other military property and is essential to military operations. *Id.* Each condition under § 1611(b)(2)(A) or (B) requires that the property is immune only if its present or future use is military; however, if it is surplus equipment or is withdrawn from military use, it would not be immune. *Id.* The Defendant claims the aircraft in this cause satisfy both conditions of § 1611(b)(2).

At the hearing before the undersigned, Salvatierra testified that it was his decision to sent the aircraft to Opa Locka, Florida for repairs in November 1992. He had the aircraft flown to the United States by Nicaragua Air Force Officers since they are owned by the military and were required to be flown by military personnel. When the aircraft arrived at Opa Locka Airport, the helicopter had a camouflage color, electrical connectors for anti-missile systems, and all of the attachments to connect the weapons; however, in order to transport it they removed the weapons. The helicopter was to be painted to obtain a better finish. The interior repair was to include such improvements as executive fittings for twelve passengers, a bathroom, tables, lighting changes, repairs to the walls and new carpeting. Salvatierra also testified that the Cessna was to be re-painted its same color and had a civilian configuration. In the cabin, repairs were to be made on the radio and automatic pilot, the passenger compartment seats, replacement of the vinyl and to fit the plane with a bathroom. Also, a small bar was to be installed along with a television. Unlike the helicopter, the Cessna was not a combat plane; however, the changes to the helicopter allowed it to retain its combat functions. In sum, the changes to be made on the aircraft were for the purpose of providing a higher level of comfort to the senior Nicaraguan military officials while being transported. The affidavit of Salvatierra asserts that the aircraft are essential to Nicaragua's national defense in that they are used to transport senior military commanders across the country due to Nicaragua's vast territory and few roads. (Defs.Mtn. for Prelim. Inj. Ex. B. Aff. Salvatierra at ¶ 5). Based on the evidence before the Court, the aircraft satisfy the criteria under § 1611(b)(2).

The Plaintiff argues that the fact these aircraft were being fitted with more luxurious "executive configurations" exempts them from the protection of § 1611(b)(2) since they are not of military character, nor configured for military functions. This Court disagrees since the evidence establishes that the aircraft are used to transport senior military personnel which is essential to military operations. The fact that the aircraft were being altered for more luxurious accommodations does not render them nonmilitary. If this were the case then Air Force One, and many other of the more luxurious military planes used to transport military officials, would not qualify as property used in military activity and of military character. This Court does not believe that is what Congress intended when enacting § 1611(b) as there is nothing in the history of § 1611(b) that implies that military property cannot have more accommodating configurations if it is used in military transport, rather than in combat.

The Plaintiff also argues that by applying § 1611(b)(2) immunity to the aircraft in this

cause would not further the legislative intent of § 1611(b)(2) which is "to avoid frustration of United States foreign policy in connection with purchases of military equipment and supplies in the United States by foreign governments." (H.R.Rep. No. 94–1487, 94th Cong.2d Sess. at pg. 31 (1976), U.S.Code Cong. & Admin.News 1976, at pg. 6630). However, the legislative intent is not frustrated by applying § 1611(b) immunity to these aircraft since by being repaired and maintained in the United States the Government of Nicaragua is encouraged to purchase military equipment and supplies for its military aircraft here in the United States without having to fear that its aircraft will be seized. Further, the legislative history establishes a more compelling reason to grant immunity to other nations' aircraft if they satisfy § 1611(b)(2) in that "[b]oth conditions will avoid the possibility that a foreign state might permit execution on military property of the United States abroad under a reciprocal application of the act [FSIA]." *Id.* Conceivably, one of the goals Congress envisions by granting immunity to foreign countries' military property which satisfies § 1611(2)(b) is to prevent citizens, as in this cause, from frustrating each countries right to defend itself. Thus, this Court finds that the aircraft are immune from execution in this cause under § 1611(b)(2).

## REPORT AND RECOMMENDATION

Based on the foregoing, the undersigned concludes that the this cause should be dismissed and the Writ of Execution quashed as to the aircraft. Accordingly, the undersigned hereby

RECOMMENDS that this cause be DISMISSED; the Writ of Execution QUASHED as to the aircraft and the Temporary Injunction to be VACATED.

The parties have ten days from the date of this Report and Recommendation within which to file written objections, if any, with the Honorable Donald L. Graham United States District Court Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. den.,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

RESPECTFULLY SUBMITTED as the United States Courthouse, Miami, Florida this 26th day of February, 1993.