ROBIN L. ROSENBERG, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court upon Plaintiff's Verified Motion for an Award of Attorney's Fees and Costs [DE 30], which the Court previously referred to the Honorable Shaniek M. Maynard for a Report and Recommendation. Judge Maynard issued a Report and Recommendation in which she recommended that the Motion be granted in part and that Plaintiff be awarded $2,756.88 in attorney fees and $880 in costs. DE 33.
Plaintiff filed an Objection to the Report and Recommendation [DE 34], and Defendants filed a Response [DE 35]. The Court has conducted a de novo review of the entire record, including Plaintiff's Verified Motion, Judge Maynard's Report and Recommendation, Plaintiff's Objection, and Defendants' Response. The Court agrees with Judge Maynard's conclusion that an award of $2,756.88 in attorney fees and $880 in costs is fair and reasonable, given the circumstances of this case and Plaintiff's level of success. The Court finds Judge Maynard's recommendation to be well reasoned and correct and agrees with the analysis in the Report and Recommendation.
For the foregoing reasons, it is hereby ORDERED and ADJUDGED :
1. Magistrate Judge Maynard's Report and Recommendation [DE 33] is ADOPTED AS THE ORDER OF
*1123 THE COURT. Plaintiff's Objection to the Report and Recommendation [DE 34] is OVERRULED.
2. Plaintiff's Verified Motion for an Award of Attorney's Fees and Costs [DE 30] is GRANTED IN PART AND DENIED IN PART.
3. Plaintiff is awarded $2,756.88 in attorney fees and $880 in costs from Defendants.
DONE and ORDERED in Chambers, West Palm Beach, Florida, this 16th day of July, 2019.
REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES & COSTS (DE 30)
SHANIEK M. MAYNARD, UNITED STATES MAGISTRATE JUDGE
THIS CAUSE comes before this Court upon the above Motion. Having reviewed the Motion and Response, noting that the Plaintiff filed no Reply, this Court recommends as follows:
1. The District Court approved the parties' settlement of this FLSA case. The Plaintiff thereby achieved prevailing party status as well as entitlement to seek an attorney fee and cost award. Pursuant to 29 U.S.C. § 216(b), a court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant". Case law permits fee-shifting under § 216(b) when a FLSA plaintiff prevails by way of a private settlement. See Silva v. Miller, 307 Fed.Appx. 349 (11th Cir. 2009).
2. Although the parties settled the amount of damages that the Defendants must pay the Plaintiff, they did not settle the amount of attorney fees and costs. As they report at page 4 of their Joint Amended Motion for Court Approval of Settlement and Dismissal with Prejudice (DE 28), "[t]he parties will resolve the matter with the Court determining reasonable attorneys' fees and costs." The Plaintiff asks for $12,392.50 in attorney fees and $900 in costs. The Defendants vigorously dispute the reasonableness of that request.
3. To understand the dispute, a review of the litigation history is helpful. The Plaintiff filed his lawsuit on October 31, 2018. The Plaintiff alleged that he had worked for the Defendants as a technician. His employment began in June 2017 and ended in March 2018. The Plaintiff alleged that the Defendants did not pay him overtime wages despite working overtime hours. However the Plaintiff did not quantify what amount was still owed. Nor did the Plaintiff contact his employer to demand payment before he filed suit.
4. Had he contacted the Defendants, he would have learned that there was a paycheck already written and waiting for him to collect. In August 2018 the U.S. Department of Labor had begun an independent investigation of the Defendants' pay practice. At DE 12-1 is the affidavit of Ms. Ciccarelli, the Defendants' Director of Human Resources, where she recalls that investigation. It had begun in August 2018, and it concerned both current employees and former employees (including the Plaintiff who had left the Defendants' employment in March 2018). The Department of Labor determined that the Defendants owed the Plaintiff $1,692.19 in unpaid overtime wages. On October 18, 2019 the Defendants recorded that retroactive wage obligation in an WH-56 form.
5. On November 16, 2018 the Defendants wrote a check to the Plaintiff for the $1,377.94 in unpaid net wages that remained after taxes and other withholdings. However the Plaintiff did not receive the check; the Defendants were unsuccessful in reaching him. Ms. Ciccarelli says that *1124 the Defendants "called the Plaintiff 3 times in the fall of 2018 and left messages that were not returned." After the Defendants' efforts at contacting the Plaintiff proved unsuccessful, the Department of Labor took over and assumed responsibility for forwarding the check to him.
6. The Plaintiff filed his lawsuit on October 31, 2018 contemporaneous with the above efforts by the Department of Labor and the Defendants to make the retroactive payment. It is unclear why the Defendants' efforts to contact the Plaintiff were unsuccessful. It is unclear why the mailing address that the Defendants used for the Plaintiff did not work, and it is unclear why the Plaintiff did not return the Defendants' telephone calls.
7. In his Complaint the Plaintiff describes the pay practice which he alleged had resulted in underpayment of his overtime wage. At ¶¶30-32 thereof, the Plaintiff describes how one individual operated and controlled the above three corporate Defendants. There was no meaningful distinction between them, however: the three companies "share[d] the same facility, resources, patients, [and] employees" with substantial overlap. The Defendants therefore acted as one unified employer. However they paid him as if he were working for three different companies, spreading his work hours among them. As an example of how the Defendants allegedly attempted "to fraudulently avoid paying overtime" in this way, the Plaintiff pointed to how he "received three different checks from each Defendant company for the same pay period" of October 10 to October 20, 2017.
8. The Plaintiff served the Defendants with his lawsuit on November 30 and December 3, 2018. The Defendants first appeared in this lawsuit on December 27, 2018. On that day they asked for additional time to respond to the Complaint. They needed time to research whether the retroactive wage payment rendered the lawsuit moot. On January 11, 2019 the Defendants moved to dismiss the Complaint on mootness grounds. The Defendants persisted in that position---both as a legal argument (the lack of a live controversy) and in the practical sense (of no need to litigate when the paycheck already had been written)---for the remainder of the case.
9. In their Response (DE 31) to the Plaintiff's Motion for Attorney Fees and Costs (DE 30), the Defendants say that the Plaintiff rebuffed their efforts to end the litigation in light of the Department of Labor's supervised wage payment. The Defendants complain that the Plaintiff did not act proactively to contact the Department of Labor. There was little that they could do because the Department of Labor had taken over the responsibility of forwarding the paycheck to the Plaintiff.
10. The Plaintiff continued to prosecute the wage claim lawsuit. On January 21, 2019 the Plaintiff made an initial demand for $10,525 in damages and $7,500 in fees and costs. On January 24, 2019 the Plaintiff filed a Statement of Claim (DE 13) in which he claimed $5,260.94 in unpaid overtime wages for which he sought an equal amount in liquidated damages (for a total of $10,521.88). He added an attorney fee claim of $5,250 (which was less than his original demand of $7,500).
11. The Defendants persisted in their argument that the Department of Labor's unpaid wage calculation of $1,692.19 was the accurate valuation. On February 1, 2019 the Defendants proffered the Plaintiff's time sheets (time sheets that the Plaintiff, himself, had filled out) to support the Department of Labor's $1,692.19 calculation.
*1125 12. The parties settled the lawsuit soon after the Defendants' Motion to Dismiss had become ripe for review and before the parties' scheduled mediation date. As the parties reported in their later filed Joint Amended Motion for Court Approval of Settlement and Dismissal with Prejudice (DE 28), the Plaintiff agreed to accept the Department of Labor's $1,692.19 calculation (and the paycheck for $1,377.94 in net wages) as full satisfaction of his unpaid wages claim. In return the Defendants agreed to pay an additional $1,692.19 in liquidated damages. In their Response (DE 31) the Defendants explain that they agreed to pay liquidated damages "simply to stop the bleeding", that is, to bring the litigation---and its expense---to an end. It spared them the expense of attending the upcoming mediation, for example.
13. What the parties were unable to settle was the amount of the attorney fees and costs that the Plaintiff should recover from this lawsuit. As the parties report in their Joint Amended Motion (DE 28), "[t]he settlement negotiations broke down with the Plaintiff at $6,000 for fees and costs and the Defendant willing to pay $2,000 for fees and costs." They left it for a separate motion for the court to determine a reasonable attorneys' fees and costs amount. That brings the matter before this Court now.
DISCUSSION
14. This Court begins the analysis by finding that the Plaintiff does have entitlement to seek attorney fees and costs. This is because the parties' settlement gives the Plaintiff prevailing party status. That settlement yielded either an award by the court of at least some relief on the merits of his claim or the judicial imprimatur of a change in the legal relationship between the Plaintiff and the Defendants. The settlement and the Court's adoption of it therefore meets the test for prevailing party status. See Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003). Nor does this Court agree that the Plaintiff's recovery can be regarded as moot. Even if this lawsuit did not result in an award of additional overtime wages (beyond what the Department of Labor already had instructed the Defendants to pay him), the Plaintiff did receive an award of liquidated damages that he would not have received had he not brought this lawsuit. That recovery, however small in proportion to his original demand, still suffices to convey prevailing party status. "Whether the Plaintiff, as the prevailing party, obtained just partial success is a different point of inquiry altogether. It comes into play last when determining, whether, and by how much, the lodestar fee should be reduced." See Marleau v. Lawmen's and Shooters' Supply, Inc., 2009 WL 10668221, *1 (S.D.Fla. 2009).
15. Nor does this Court see the kind of bad faith seen in Goss v. Killian Oaks House of Learning, 248 F.Supp.2d 1162 (S.D.Fla. 2003) in this case. There is no evidence that the Plaintiff actually knew of the paycheck's existence when he filed the Complaint (even if circumstances suggest that he should have known about it). It is true that the Plaintiff continued to press the litigation after the Defendants had informed him (through his counsel) about the waiting paycheck. On the other hand the Plaintiff did settle the case before the Motion to Dismiss was ruled upon and before the parties incurred the expense of attending mediation, and thus still relatively early in the litigation process. Moreover the litigation yielded a damages recovery in addition to what the Department of Labor had obtained for him. Consequently the circumstances do not show a bad faith motive or an unreasonably protracted prosecution by the Plaintiff of his claim.
*1126 Instead the Plaintiff's choice to pursue litigation does affect the reasonableness analysis and the amount of attorney fees he may recover.
16. Nor does this Court deny the Plaintiff's Motion on procedural grounds. The Defendants complain that the Plaintiff did not confer with them before they filed their Motion, in compliance with Local Rule 7.3. However the parties' Joint Amended Motion for Court Approval of Settlement and Dismissal with Prejudice (DE 28) shows that a pre-filing conferral did happen in substance. Indeed the Defendants agreed that the amount of the fee award would require a judicial ruling. Moreover, in the "Local Rules 7.1 and 7.3 Certification" at the end of his Motion, Plaintiff's counsel certifies that "[p]ursuant to the written Settlement Agreement of the parties, the parties were unable to resolve the issue of attorney fees." Plaintiff's counsel certifies further that "pursuant to Local Rule 7.3, that he has fully reviewed the time records and supporting data in support of this Motion and it is well grounded in fact and justified." Therefore, to the extent the Plaintiff may have fallen short of full technical compliance with the requirements of Local Rule 7.3, the greater circumstances show compliance in substance. Therefore this Court proceeds to consider the Motion's merits.
The Reasonable Fee Amount
17. Having found no reason to deny the Plaintiff's Motion on entitlement or other grounds, this Court proceeds to consider the merits of his claim. That is, whether the Plaintiff may recover the full $12,392.50 in attorney fees that he claims and if not, then what the reasonable fee amount should be. Reasonableness is measured against the federal "lodestar" standard. The lodestar fee is the product of the number of hours reasonably expended working on the case and the reasonable hourly rate. As the moving party, it is the Plaintiff's burden to prove the reasonableness of his fee request. This Court draws the governing standard and how it is met from Grubbs v. A-1 Gutters & More, LLC, 2018 WL 4410914 (S.D.Fla. 2018), Arnold v. Heritage Enters. of St. Lucie, LLC, 2018 WL 1796265 (S.D.Fla. 2018), Marchisio v. Carrington Mortgage Servs., LLC, 2017 WL 5478285, *3 (S.D.Fla. 2017), SEC v. We the People, Inc., 2013 WL 12091646 (S.D.Fla. 2013), and Marleau, supra, and the Eleventh Circuit case law to which they cite.
18. This Court considers the hourly rate first. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, expertise, and reputation. On this subject this Court is itself an expert, and it may rely on its own knowledge and experience. Two attorneys worked on this case. Mr. Saba claims a $350 hourly rate, and Mr. Elliott claims a $275 hourly rate. The $350 hourly exceeds what is reasonable for an FLSA case for the Fort Pierce Division of the Southern District of Florida. The $275 hourly rate is more consistent with the prevailing market rate. Consequently this Court will use the $275 for both attorneys' work hours. Moreover, because $275 is the full market rate for an FLSA case litigated in the Fort Pierce Division, it implies a high degree of expertise and experience which in turn implies efficiency. That efficiency should result in relatively fewer work hours expended.
19. That brings the analysis around to work hours expended. Between them, the two attorneys claim a total of 40.1 hours. That includes time spent on the fee and cost motion, itself, which is recoverable. This Court discerns nothing patently unreasonable about the work hours claimed. Half of the total time spent---20.5 hours---was *1127 on the substantial task of writing the Response to the Defendants' Motion to Dismiss, which is a generally reasonable length of time to have spent on that task. As another representative sample, this Court notes that the attorneys claim 2.80 hours spent drafting the Complaint. Nearly three hours billed for that task does seem excessive, however, even after noting how the Complaint was not simply a form complaint but incorporated facts specific to this case. For the work hours that the Plaintiffs' counsel say that they worked on this case---a point of inquiry different from whether the Plaintiff should have continued prosecuting this case, this Court stresses---this Court finds it overall reasonable.
20. The above analysis yields an overall reasonable lodestar fee of $11,027.50. That is, the product of the 40.1 work hours and the $275 hourly rate.
21. That is not the end of the reasonable fee inquiry, however. The lodestar fee may be reduced to account for partial success. The $1,692.19 in liquidated damages that the Plaintiff recovered from this litigation is just 16% of the $10,521.88 he originally claimed. In other words the Plaintiff recovered substantially less than what he originally said he was owed. The time sheets that he, himself, had filled out showed substantially less overtime hours than what he claimed in his Complaint.
22. An additional factor relevant to the partial success consideration is the fact that he had a paycheck already waiting for him to collect. This Court assumes that he filed this lawsuit without actual knowledge of its existence. As soon as the Defendants appeared in this litigation, the Plaintiff was informed of it, however. That he continued to prosecute this case without also taking proactive steps to obtain that paycheck implies an informed decision to assume the cost of litigation of a potentially moot claim.
23. While that does not defeat his entitlement to a fee award, this Court does find it to be a relevant factor that supports a fee award reduction. The principle of good billing judgment illustrates why. As the cases cited above explain, Plaintiff's counsel should ask the Defendants only to pay the same attorney fee bill that they would expect their own client, the Plaintiff, to pay. If counsel would not expect the Plaintiff to pay for the continued prosecution of the case, then they should not expect the Defendants to bear that expense either.
24. Having determined that a partial reduction is warranted, the next question is how much the reduction should be. In light of the full circumstances, this Court finds that the Plaintiff should recover a quarter of the lodestar fee, or $2,756.88. This Court finds $2,756.88 to be a fair compromise of all the competing factors. This Court adds that the Plaintiff did not reply to the Defendants' vigorous opposition to the fee request.
Costs
25. As the prevailing party, Rule 54(d), Fed.R.Civ.P., permits the Plaintiff to recover his costs. As for what costs are taxable, the Plaintiff is limited to those cost types that 28 U.S.C. § 1920 specifically permit. See Grubbs, supra .
26. The Defendants complain that the Plaintiff does not submit a Bill of Costs on the proper form. Instead the Plaintiff submits a cost invoice which he attaches to his Motion as Exhibit 2. This Court accepts that invoice as his "Bill of Costs" as an equivalent form.
27. This Court will permit the Plaintiff to tax his $400 filing fee and the $480 spent on process server fees. This Court permits the recovery of those costs because *1128 the record does not demonstrate the Plaintiff's actual knowledge of the waiting paycheck when he undertook those litigation activities. This Court also will permit the Plaintiff to recover the process server fee expenses despite not submitting the invoices. The record shows that a process server was used, and this Court construes counsel's "Local Rules 7.1 and 7.3 Certification" as verification that the claimed cost amount is accurate. However this Court does not find the Plaintiff entitled to recover the $20.00 in postage/USPS/FedEx expenses. That expense is not taxable under § 1920.
ACCORDINGLY, this Court recommends to the District Court that the Plaintiff's Verified Motion for Award of Attorney's Fees and Costs (DE 30) be GRANTED in part. This Court recommends that the Plaintiff be AWARDED $2,756.88 in attorney fees and $880.00 in costs.
The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749-50 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).
DONE AND SUBMITTED in Chambers at Fort Pierce, Florida, this 23rd day of May, 2019.