**In re REPUBLIC SERVICES, INC. SECURITIES LITIGATION.**

No. 99–7204–CIV.

United States District Court, S.D. Florida.

Feb. 12, 2001.

1356

Maya Susan Saxena, Abraham Rappaport, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, for plaintiff.

Stanley Howard Wakshlag, Brian Paul Miller, Akerman, Senterfitt & Eidson, Miami, FL, Laurie Smilan, Bruce Vanyo, Michele Rose, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ORDER GRANTING PLAINTIFFS LEAVE TO AMEND

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Defendants' Motion to Dismiss Consolidated and Amended Complaint [DE 30], Plaintiffs' Motion to Withdraw Fred Skopp as a named plaintiff and class representative [DE 40], and Defendants' Motions to File Reply in Excess of Ten Pages [DE 41]. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiffs filed a two-count Consolidated Amended Class Action Complaint (hereinafter, "Complaint") alleging that Defendant Republic Services Inc. ("Republic") and several of its senior executives[1] violated federal securities laws, in particular Section 10(b) of the Securities and Exchange Act, Rule 10b–5 and Section 20(a) of the Exchange Act. Republic is engaged in the business of solid waste disposal. The Complaint alleges that during the class period from January 28, 1999 through August 28, 1999 Republic and the senior executives misled investors by repeatedly referring to recent acquisitions of Waste Management, Inc. ("WMI") assets as successful and leading to strong performance, while these executives must have known that these acquisitions were not being integrated and were leading to higher costs and lower profits for Republic.

Turning to the specifics of the complaint, Plaintiffs allege the following misleading statements:

— January 28, 1999—Company press release regarding 1998 year-end financial results of increased revenues and operating income stemming from the "successful execution of the Company's growth and operating strategies," particularly the acquisition of certain landfills, transfer stations and collection routes from WMI in September, 1998.

— March 3, 1999—Public statements made touting the public offering of Republic Services, Inc. shares by parent corporation Republic Industries (known as ·Autonation, Inc. since April 16, 1999), in which the Waste Management acquisition is

---

1. The individual defendants are H. Wayne Huizenga, a member of the board of Republic and Chairman of Republic's former parent company, James O'Connor, Chief Executive Officer of Republic, Tod C. Holmes, Chief Financial Officer of Republic, and Harris W. Hudson, Vice Chairman and a member of the board of Republic.

touted as a "successful execution of growth."

— March 31, 1999 and April 27, 1999—The statements from the March 3, 1999 public offering are repeated in amended filings of the S–1 statement required for public offerings by the SEC.

— April 29, 1999—A company press release regarding 1999 first quarter financial report in which the WMI assets are cited as leading to strong first quarter performance.

— May 6, 1999—Republic Services' quarterly report describes this strong performance as a result of the recent acquisitions.

— May 19, 1999—Public filings required for upcoming offering of public debt in the Company also tout "high-quality businesses" acquired by Republic.

— July 12, 1999—Press release announcing second quarter target for growth by acquisition has been met.

— July 28, 1999—Press release accompanying second quarter 1999 earnings announcement stated that "focus on integrating existing markets though our nick-in acquisition strategy helped us substantially improve operating margins during the quarter."

Plaintiffs allege that these company statements, along with the motive of Republic Industries (and then Autonation) to inflate the price of the shares of Republic Services prior to the public offering of stock in Republic Services in late April, 1999, the public debt offering in May, 1999, and the acquisition of additional businesses on July 29, 1999, combined with allegations that the individual Defendants had to have known, or were reckless in not knowing, that the integration of the Waste Management assets were raising costs rather than increasing profits, all add up to sustain a securities fraud case against the Defendants.

The Defendants have moved to dismiss the consolidated amended class action complaint described above for failure to state a claim under Section 10(b) and Rule 10b–5, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Defendants assert that Plaintiffs have failed to meet the scienter standard of severe recklessness, that Plaintiffs have failed to plead any facts supporting their allegations that Defendants knew that misleading statements were made, and to the extent statements were made by Defendants, any such statements are forward looking statements protected by the safe harbor provisions of the PSLRA.

## II. DISCUSSION

 To maintain a Rule 10b–5 fraud action a plaintiff must establish 1) a false statement or omission of material fact, 2) made with scienter, 3) upon which the plaintiff justifiably relied, and 4) that proximately caused the plaintiff's injury. *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997). The United States Court of Appeals for the Eleventh Circuit has explained the standards to use under the PSLRA. In addition to meeting the above elements of a Rule 10b–5 action, a plaintiff "must plead with particularity, specific facts which give rise to a strong inference that the defendant acted in a severely reckless fashion." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1285 (11th Cir.1999). Thus, the scienter needed to maintain a Rule 10b–5 action in this Circuit is severe recklessness.

██ Even if a plaintiff can meet this pleading standard, the PSLRA allows defendants to argue on a motion to dismiss that the statements at issue were "forward-looking statements." 15 U.S.C. § 78u–5(c)(1); *Harris v. Ivax Corporation,* 182 F.3d 799, 803 (11th Cir.1999). Liability for forward-looking statements may be avoided if such forward-looking statement "is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i); *Ivax,* 182 F.3d at 803. In addition, even if the forward-looking statement has no accompanying cautionary statement, a plaintiff must prove that the defendant made the statement with "actual knowledge" that it was "false or misleading." 15 U.S.C. § 78u–5(c)(1)(B); *Ivax,* 182 F.3d at 803.

### A. Scienter Requirement

██ Defendants' first argument is that Plaintiffs have failed to show the necessary scienter of severe recklessness, since, among other reasons, Defendants did not profit from their alleged misrepresentations during the class period by selling stock. The Court will address Plaintiffs' various arguments in support of a finding that the necessary scienter has been plead.

As Defendants correctly note, even in cases where defendants profit by selling stock allegedly pumped up during the relevant period by alleged misrepresentations regarding company performance, the nec-

essary scienter is not always sufficiently plead. In this case, no personal financial motive has been plead.[2] Rather, Plaintiffs argue that as "hands-on" senior officers of Republic Services, Defendants must have known that the WMI assets could not be effectively integrated, despite the rosy statements regarding such integration and attendant cost savings. However, such allegations, running contrary to a defendant's "informed economic self-interest", have been held insufficient for scienter, even prior to the PSLRA. See *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2nd Cir.1994). Plaintiffs also argue that Defendants' acquisition strategy was a critical part of their overall corporate strategy for Republic Services, and therefore whether the WMI acquisitions were successful had to have been known to the Defendants during the class period. Such temporary inflating of the stock price to fuel acquisitions, a strategy not confined to Republic Services but to many public companies, is too attenuated to show motive or the necessary scienter for the Defendants in this case. *Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, 1361 (S.D.Fla.1998), *aff'd,* 226 F.3d 647 (11th Cir.2000). In addition, courts have also held that the magnitude of the error is not sufficient to sustain a claim for securities fraud. See *Rhodes v. Omega Research,* 38 F.Supp.2d 1353, 1363 (S.D.Fla.1999) (gross misstatement of gross profit margins and other statistics in two quarterly reports), *citing Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994).

██ Plaintiffs also argue that the August 29, 1999 disclosure by Defendants

2. Plaintiffs argue that the public offering in April, 1999, by Republic Services' parent company, of Republic Services stock, was motive enough to create scienter, since at least Defendant Huizenga reportedly sold the parent company stock at a future date. However-

er, that specific allegation of personal sales of the parent company stock does not appear in the complaint, and the alleged sale by Mr. Huizenga did not occur until February 3, 2000.

causing the five dollar per share drop in Republic Services stock price came so close to the July 29, 1999 touting of second quarter earnings that Defendants must have known that their acquisition strategy was in fact not working and would result in cost increases and profit decreases. However,

> The mere temporal proximity of the conflicting statements is not sufficient: "[T]emporal proximity between positive statements stressing a firm's strengths and announcements of poor economic performance do not create an inference that the earlier statements were fraudulent."

*In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276, 283 (7th Cir. 1996).

Finally, Plaintiffs place a heavy emphasis on the September 2, 1999 quote in the newspaper by Defendant O'Connor, in which he refers to the WMI assets as "second tier."[3] Plaintiffs argue that this statement proves that O'Connor at least knew that the WMI assets could not be fully integrated at a cost savings during the class period. Plaintiffs argue that Defendants' attempt to place these statements in context by arguing that "second-tier" means further away from city centers, rather than lower in quality, forces the Court to make an evaluation of the evidence and a merits-related determination that is improper upon a motion to dismiss. However, the issue that the Court must determine is whether a plaintiff has "plead with particularity, specific

facts which give rise to a strong inference that the defendant acted in a severely reckless fashion." *Bryant v. Avado Brands, Inc.*, 187 F.3d at 1285. In this regard, the Court concludes that the statement of O'Connor is subject to interpretation as to the meaning of "second-tier," was not made in a company document but in a newspaper article written by someone other than O'Connor thus creating evidentiary issues, and is simply not sufficient evidence plead with particularity facts giving rise to a strong inference of severe recklessness as required by the PSLRA in this Circuit.

### B. Pleading with Particularity

■ The PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.A. § 78u–4(b)(1). Another Court in this District has stated in finding that the standard has been met, a complaint must "set forth in detail and with particularity the statements Plaintiffs allege to be false, when the statements were made, who made the statements, why the statements are false, and what the Defendants stood to gain in making the statements." See *In re Sunbeam Securities Litigation*, 89 F.Supp.2d 1326, 1338 (S.D.Fla.1999). Still another Court in this District raised the following questions regarding a complaint alleging certain company actions and statements were misleading:

---

**3.** "A lot of this [earnings less than anticipated] is founded on the fact that we set expectations too high," said O'Connor. "The landfills we got in the Waste Management divestiture were second-tier assets, and we understood that. But we didn't appropriately estimate how much it would cost to get the material there." *Republic to Look Harder at Deals*, Sun–Sentinel (Fort Lauderdale), September 2, 1999, at 1D, submitted as Exhibit E to Defendants' Reply in Support of Motion to Dismiss.

"Upon what facts do the Plaintiffs base their belief that the shelf-stock adjustment practice existed? As to which products was the practice in place? Who were the customers given such shelf-stock adjustments? How much inventory of product did those customers buy? When was IVAX forced to adjust the price of that inventory and to what extent? To what extent did these adjustments affect IVAX's financial projections? These are just some of the questions that a complaint must answer to satisfy the requirements of [the PSLRA]."

*Malin v. Ivax Corp.*, 17 F.Supp.2d at 1360.

■ Applying these cases to this case, the Court determines that while Plaintiffs are particular regarding who made the statements listed on page two of this Order, they have no further specifics to support the allegations. Plaintiffs also do not name the source of their allegations that company insiders knew that the WMI assets were of lower quality. Defendants argue that Plaintiffs must name a source with personal knowledge of the strength of the assets. Plaintiffs, citing various unpublished opinions, argue that this requirement is not in the PSLRA and can violate attorney-work product for pre-complaint investigations. Defendants on the other hand, cite to several cases to support the notion that a PSLRA complaint must set forth the source of the information and the reasons for the belief. See *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991) (approved but superceded by statute as described in *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193–194 (1st Cir.1999)); *In re Green Tree Financial Corp.*, 61 F.Supp.2d 860, 872 (D.Minn. 1999) (additional cases cited therein). Upon reviewing the competing case law,

this Court is more convinced by Defendants' citations, and concludes that the allegations regarding company knowledge of the underperforming of certain WMI assets do not plead fraud with sufficient particularity.

Defendants further argue that the PSLRA requires these Plaintiffs to plead "all facts on which that belief is formed," since the instant complaint is based upon "information and belief." See 15 U.S.C. § 78u–4(b)(1)(B). Defendants argue that although the first paragraph of the complaint states that the following complaint is based upon "investigation of counsel," the complaint should be analyzed as one based upon "information and belief." Plaintiffs argue that "investigation of counsel" takes a complaint out of the requirement to plead all facts, relying on a series of District Court opinions from California and Arizona. See Plaintiffs' Opposition to Motion to Dismiss, at p. 23, n. 13. In reply, Defendants cite to *In re Silicon Graphics Inc.*, 183 F.3d 970, 985 (9th Cir.1999), for the proposition that even a complaint stating in its preamble that the "foregoing [is] based upon the investigation of counsel" must "provide, in great detail, all the relevant facts forming the basis of [plaintiffs'] belief." Thus, the Court again agrees with Defendant that Plaintiffs complaint in this case fails to plead with particularity all facts upon which their belief if formed.

## C. Forward–Looking Statements

■ Although based upon the above conclusions, the Court is dismissing the Complaint, since this dismissal is coupled with leave to amend, the Court will continue to address Defendants' argument that the statements put forth by Plaintiffs as misleading are all forward-looking statements. On this issue, the Court disagrees

with Defendants to the extent that statements regarding past or present performance of the WMI assets are not forward-looking statements. At the same time, to the extent the allegedly misleading statements contain verbiage that revenue growth will continue into the future, such statements are forward-looking statements under 15 U.S.C. § 78u–5(c)(1). Moreover, if such forward-looking statements are mixed in with sentences describing known facts, the entire statement is treated as a forward-looking statement for purposes of the PSLRA safe harbor provisions. *Ivax*, 182 F.3d at 807.[4]

If these forward-looking statements are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," then even misleading forward-looking statements are not actionable under the PSLRA. See 15 U.S.C. § 78u–5(c)(1)(A)(i). The Eleventh Circuit held in *Ivax* that the cautionary statement need not "explicitly mention the factor that ultimately belies a forward-looking statement." *Ivax*, 182 F.3d at 807. In this case, however, Defendants argue that several cautionary statements in the January 29, 1999 10–K specifically discuss that consolidation of operations with operations of acquired companies present "significant challenges" and the company cannot assure shareholders that they "will effectively integrate companies which are acquired." See Appendix–Volume I to Defendants' Motion to Dismiss, Exhibit 16, page 14. Therefore, these forward-looking statements are protected by the PSRLA safe harbor provision.

## D. "Bespeaks Caution" Doctrine

■ Finally, to the extent the statements regarding the integration of WMI assets alleged to be misleading by Plaintiffs are not forward looking statements that are immune under the PSLRA's safe harbor, this Court concludes in the alternative that the allegations in the Complaint regarding these statements may be dismissed under this Circuit's pre-PSLRA "bespeaks caution" doctrine. *Saltzberg v. TM Sterling/Austin Assoc., Ltd.*, 45 F.3d 399, 400 (11th Cir.1995). As discussed above, at the outset of the class period in the January 29, 1999 10–K report, Defendants warned that they may not be able to effectively integrate acquisitions necessitated by the rapidly consolidated solid waste industry. See Appendix–Volume I to Defendants' Motion to Dismiss, Exhibit 16, page 14. Thus, investors were put on notice by Defendants that acquisitions may not reach expectations of profit increases. The issuance of a warning by Defendants in January of 1999 on the very issue that Plaintiffs allege was withheld from investors by Defendants during the class period vitiates the ability of Plaintiffs to maintain a securities fraud case on these alleged omissions. Investors were on notice of the exact problem that caused Republic to lower earnings estimates, providing an alternative basis to dismiss the Complaint.

## E. Individual Liability

■ In the absence of a viable Section 10(b) or Rule 10b–5 claim, an action against controlling individuals pursuant to Section 20(a) cannot be maintained. See

---

4. There is no authority in this Circuit to hold that a company must specifically identify which statements in a document are the forward-looking statements. Thus, a statement at the end of each release or filing stating generally that forward-looking statements in this release or report are made pursuant to the safe harbor provisions of the PSLRA are considered sufficient, rather than a specific labeling of each statement as forward-looking.

*Ehlert v. Singer,* 85 F.Supp.2d 1269, 1274 (M.D.Fla.1999).

### III. CONCLUSION

The Court concludes that the complaint in this case should be dismissed, based upon the reasons above, in particular the failure to plead with particularity specific facts which give rise to a strong inference that the Defendants acted in a severely reckless fashion in making the statements in Section I. The Court, however, will give Plaintiffs leave to amend.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Withdraw Fred Skopp as a named plaintiff and class representative [DE 40] is hereby **GRANTED;**

2. Defendants' Motions to File Reply in Excess of Ten Pages [DE 41] is hereby **GRANTED;**

3. Defendants' Motion to Dismiss Consolidated and Amended Complaint [DE 30] is hereby **GRANTED.** The Complaint is dismissed, however, Plaintiffs are hereby granted leave to file an amended complaint by March 7, 2001. Failure to timely file an amended complaint will result in a closing of this case and a dismissal with prejudice.